IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

JAY JOHNSON,

        Petitioner,

  v.

A.P. KANE, Warden,

        Respondent.

Case No. CIV 07-712RJB

ORDER ON FURTHER BRIEFING

This matter comes before the court on petitioner's petition for writ of habeas corpus. Dkt. 1. The court has considered the relevant documents and the remainder of the file herein.

## INTRODUCTION

Petitioner is a state prisoner currently incarcerated at the California Training Facility in Soledad, California. He filed this petition for writ of habeas corpus to challenge his 2002 Placer County, California conviction. Respondent filed an answer and relevant portions of the record. Dkt. 13 and 14. Petitioner filed a traverse. Dkt. 15.

## PROCEDURAL AND FACTUAL HISTORY

On November 19, 2002, petitioner convicted by jury trial of first degree murder (Cal. Pen. Code § 187(a))(Count 1); attempted murder (Pen. Code §§ 664/187(a))(Count 2); and two counts of assault with a deadly weapon (Pen. Code. § 245)(Counts 5 and 6). The jury found true allegations of personal use of a deadly weapon (Pen. Code. § 12022(b)), and personal infliction of great bodily injury (Pen. Code §

12022.7). Petitioner was acquitted on charges of attempted robbery and burglary.

On December 19, 2002, the court sentenced petitioner to an indeterminate term of 25 years to life on Count 1, first degree murder, as well as a one-year enhancement for the personal use of a deadly weapon. The court imposed a consecutive term of 13 years on Count 2 (attempted murder), and stayed sentences for Counts 5 and 6 (assault with a deadly weapon). Petitioner was on probation at the time of these crimes.

The California Court of Appeal summarized the facts of the case as follows:

### FACTS

Ronald Booker and his wife Laurie Niami lived in an isolated area of Colfax. On April 16, 2001, Booker was recovering from surgery on the quadriceps of his right leg. About 5:15 a.m. that morning, Booker was having coffee and changing the dressing on his leg when defendant entered the home through unlocked French doors in the back of the house. Defendant was carrying a plastic bag and a tree branch. Booker called to his wife to call the police.

Defendant began striking Booker in the head and body with the branch. Unable to defend himself, Booker called to his wife for help. As Niami ran at defendant, he struck her in the face, knocking her unconscious. Defendant returned to striking Booker with the branch until it broke. Hoping defendant would take what he wanted and leave, Booker feigned unconsciousness. However, defendant continued to strike Booker, poured hot coffee down Booker's neck, and pulled an electric cord from the wall and held it like a rope. Booker pushed himself to his knees and defendant dropped the cord, picked up a cane and struck Booker with it, breaking it over Booker's head. Defendant, who was wearing climbing boots, then kicked Booker two or three times in the chest.

Booker managed to hit defendant once in the head and grab defendant's jacket. Defendant got out of the jacket, smiled at Booker and kicked Niami twice in the head. Still on his knees, Booker pushed back his scalp which was now hanging over his face. Defendant picked up a solid oak television tray and struck Booker over the head with it. Defendant then slammed the tray down on Niami's throat with "crushing" force.

Booker asked defendant why he was doing this and defendant replied that Jesus had sent him and his brother to kill everybody in the house. Booker said, "Not today, Charlie," and defendant turned and ran out of the house.

Niami died as a result of defendant's assault on her.

Defendant was arrested later that morning in a café by Sergeant Holguin. Defendant had fresh cuts on his head and hands. Defendant said he had fallen on rocks while gold mining. Defendant told Captain Armstrong that a big man had hit him with a rock while on a trail, and had stolen defendant's Denver Bronco's baseball cap, his upper dentures, jacket, and shirt. A Denver Bronco's baseball cap and dentures were found at Booker's residence. Defendant told Armstrong that he had been fasting, loved Jesus, and wanted to call his mother.

Defendant testified he left a mining camp where he was working an hour before dark and was walking to Colfax when he was struck by a pickup and knocked cold. When he regained consciousness he was wet with sweat and had chills. Defendant believed he was struck by Booker because he was hit in Booker's driveway.

> Defendant went to Booker's house where he was attacked by Booker and Niami and some of his property was taken. The struggle was violent, with Booker atop defendant trying to strangle him and also breaking a television tray over defendant's head. Defendant fought back in self-defense and may have inadvertently kicked Niami in the face when he was being strangled by Booker. Defendant denied ever having a weapon or intentionally kicking anyone.

*People v. Johnson*, 2005 WL 318583 * 1-2 (Cal.App.3 Dist.)(Dkt. 29, Exh. F, at 2).

Petitioner filed a direct appeal with the California Court of Appeal, Third Appellate District, which affirmed his conviction on February 9, 2005. Petitioner's petition for review was denied by the California Supreme Court on May 11, 2005, stating as follows:

> Petition for review denied without prejudice to any relief to which defendant might be entitled after this court determines in *People v. Black*, S126182, and *People v. Towne*, S125677, the effect of *Blakely v. Washington* (2004) __U.S. __ 124 S.Ct. 2531, on California law.

Dkt. 1, at 11.

On March 3, 2006, petitioner filed this petition for writ of habeas corpus. Dkt. 1. The court has carefully reviewed the entire record in this case.

## CLAIMS

Petitioner raises three claims in his petition, which are quoted as follows:

1. Petitioner contends the trial court's refusal to permit petitioner from entering a plea of not guilty by reason of insanity vitiated his "Substantive" rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

2. Petitioner avers there is a dichotomy between the state and federal standards for determining competency, contumacious to Due Process of law.

3. Petitioner contends the trial court's decision to impose upper and consecutive terms were based on factors which violated the Sixth Amendment right to jury trial.

Docket 1.

## EXHAUSTION

Before claims may be raised in a federal habeas corpus petition, state remedies must be exhausted; or an applicant must show there is either an absence of available state corrective process or that circumstances exist that render such process ineffective to protect the rights of the applicant. 28 U.S.C. § 2254(b)(1); *see also Rose v. Lundy*, 455 U.S. 509 (1982). A claim has been exhausted once it has been fairly presented to the state's highest court and the court has had the opportunity to rule on the merits of the claim. *See O'Sullivan v. Boerckel*, 119 S.Ct. 1728, 1733-34 (1999); *Picard v. Connor*, 404 U.S. 270, 275-276 (1971); *Batchelor v. Cupp*, 693 F.2d 859, 862(9th Cir. 1982), *cert. denied*, 463 U.S. 1212

(1983).

Mixed petitions are those habeas petitions consisting of both exhausted and unexhausted claims. *See Rose v. Lundy*, 455 U.S. at 510. District courts generally must dismiss such mixed petitions, leaving the prisoner with the choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted claims to the district court. *Id*. This total exhaustion requirement presented significant difficulties once Congress enacted AEDPA in 1996, imposing a one-year statute of limitations on the filing of habeas petitions in federal court. 28 U.S.C. § 2244(d). *See Rhines v. Weber*, 544 U.S. 269, 274-75 (2005). The AEDPA limitations period is tolled while a prisoner seeks collateral review in a state court, but not while the prisoner is in federal court. 28 U.S.C. § 2244(d)(2); *Rhines*, 544 U.S. at 274-75.

To make it possible for a petitioner to exhaust claims in state court but to avoid the time bar of the AEDPA, district courts may stay mixed petitions in certain circumstances while the petitioner exhausts unexhausted claims. *Rhines*, 544 U.S. at 278; *Jackson v. Roe*, 425 F.3d 654, 659-61 (9th Cir.2005) (discussing the *Rhine*s holding). A stay of the federal habeas petition is appropriate only when (1) good cause exists for petitioner's failure to exhaust; (2) petitioner's unexhausted claims are not "plainly meritless"; and (3) there is no indication that petitioner engaged in "abusive litigation tactics or intentional delay." *Id.* at 277-278.

Petitioner arguably exhausted his first and second claims in this habeas action. He did not fully exhaust his third claim regarding sentencing. The California Supreme Court denied his petition for review without prejudice to any relief to which petitioner might be entitled after the California Supreme Court determined the effect of *Blakely v. Washington, supra*, on California law. *People v. Cunningham*, 549 U.S. 270 (2007) may also be relevant to any claims petitioner might make in State court. Proceedings in *People v. Towne*, 44 Cal.4th 63 (June 26, 2008) and *People v. Black*, 41 Cal.4th 799 (2007) are now apparently concluded. In the petition denying review, the California Supreme Court left open the possibility for petitioner to pursue relief once *Towne* and *Black* were decided. It is unclear whether, given the recent rulings in *Towne* and *Black*, petitioner's claims are or are not "plainly meritless." It appears to the court that further briefing on that issue is appropriate, before the court determines whether petitioner should be afforded the opportunity to attempt to exhaust Claim 3 in state court.

Therefore, it is hereby

**ORDERED** that not later than March 20, 2009, respondent may file an amended answer, addressing only the issue presented above: whether petitioner should be permitted to attempt to exhaust Claim 3 in the California state courts. Not later than April 10, 2009, petitioner may file a response to the amended answer, addressing only the issue of whether he should be permitted to attempt to exhaust Claim 3 in the California state courts. The petition for writ of habeas corpus is **RENOTED** for consideration on April 10, 2009.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 25th day of February, 2009.

/s/ Robert J. Bryan
ROBERT J. BRYAN
United States District Judge