IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

JAY JOHNSON,

                Petitioner,

    v.

A.P. KANE, Warden,

                Respondent.

Case No. CIV 07-712RJB

ORDER ON PETITION
FOR WRIT OF HABEAS
CORPUS

This matter comes before the court on petitioner's petition for writ of habeas corpus. Dkt. 1. The court has considered the relevant documents and the remainder of the file herein.

## INTRODUCTION

Petitioner is a state prisoner currently incarcerated at the California Training Facility in Soledad, California. He filed this petition for writ of habeas corpus to challenge his 2002 Placer County, California, conviction. Respondent filed an answer and relevant portions of the record. Dkt. 13 and 14. Petitioner filed a traverse. Dkt. 15. At the court's request, respondent filed supplemental briefing (Dkt. 20); petitioner filed a motion requesting appointment of counsel as well as an extension of time to file supplemental briefing (Dkt. 21). A review of the record shows that the claims do not warrant habeas relief. Accordingly, the petition should be denied and the case dismissed with prejudice.

## PROCEDURAL AND FACTUAL HISTORY

On November 19, 2002, petitioner was convicted by jury trial of first degree murder (Pen. Code §

187(a))(Count 1); attempted murder (Pen. Code §§ 664/187(a))(Count 2); and two counts of assault with a deadly weapon (Pen. Code. § 245)(Counts 5 and 6). The jury found allegations of personal use of a deadly weapon (Pen. Code. § 12022(b)), and personal infliction of great bodily injury (Pen. Code § 12022.7) to be true. Petitioner was acquitted on charges of attempted robbery and burglary.

On December 19, 2002, the court sentenced petitioner to an indeterminate term of 25 years to life on Count 1 (first degree murder) as well as a one-year enhancement for the personal use of a deadly weapon. The court imposed a consecutive term of 13 years on Count 2 (attempted murder), and stayed sentences for Counts 5 and 6 (assault with a deadly weapon). Petitioner was on probation at the time of these crimes.

The California Court of Appeal summarized the facts of the case as follows:

FACTS

Ronald Booker and his wife Laurie Niami lived in an isolated area of Colfax. On April 16, 2001, Booker was recovering from surgery on the quadriceps of his right leg. About 5:15 a.m. that morning, Booker was having coffee and changing the dressing on his leg when defendant entered the home through unlocked French doors in the back of the house. Defendant was carrying a plastic bag and a tree branch. Booker called to his wife to call the police.

Defendant began striking Booker in the head and body with the branch. Unable to defend himself, Booker called to his wife for help. As Niami ran at defendant, he struck her in the face, knocking her unconscious. Defendant returned to striking Booker with the branch until it broke. Hoping defendant would take what he wanted and leave, Booker feigned unconsciousness. However, defendant continued to strike Booker, poured hot coffee down Booker's neck, and pulled an electric cord from the wall and held it like a rope. Booker pushed himself to his knees and defendant dropped the cord, picked up a cane and struck Booker with it, breaking it over Booker's head. Defendant, who was wearing climbing boots, then kicked Booker two or three times in the chest.

Booker managed to hit defendant once in the head and grab defendant's jacket. Defendant got out of the jacket, smiled at Booker and kicked Niami twice in the head. Still on his knees, Booker pushed back his scalp which was now hanging over his face. Defendant picked up a solid oak television tray and struck Booker over the head with it. Defendant then slammed the tray down on Niami's throat with "crushing" force.

Booker asked defendant why he was doing this and defendant replied that Jesus had sent him and his brother to kill everybody in the house. Booker said, "Not today, Charlie," and defendant turned and ran out of the house.

Niami died as a result of defendant's assault on her.

Defendant was arrested later that morning in a café by Sergeant Holguin. Defendant had fresh cuts on his head and hands. Defendant said he had fallen on rocks while gold mining. Defendant told Captain Armstrong that a big man had hit him with a rock while on a trail, and had stolen defendant's Denver Bronco's baseball cap, his upper dentures, jacket, and shirt. A Denver Bronco's baseball cap and dentures were found at Booker's residence. Defendant told Armstrong that he had been fasting, loved Jesus, and wanted to call his mother.

> Defendant testified he left a mining camp where he was working an hour before dark and was walking to Colfax when he was struck by a pickup and knocked cold. When he regained consciousness he was wet with sweat and had chills. Defendant believed he was struck by Booker because he was hit in Booker's driveway.
>
> Defendant went to Booker's house where he was attacked by Booker and Niami and some of his property was taken. The struggle was violent, with Booker atop defendant trying to strangle him and also breaking a television tray over defendant's head. Defendant fought back in self-defense and may have inadvertently kicked Niami in the face when he was being strangled by Booker. Defendant denied ever having a weapon or intentionally kicking anyone.

*People v. Johnson*, 2005 WL 318583 * 1-2 (Cal.App.3 Dist.)(Dkt. 29, Exh. F, at 2).

Petitioner filed a direct appeal with the California Court of Appeal, Third Appellate District, which affirmed his conviction on February 9, 2005. On May 11, 2005, the California Supreme Court denied petitioner's petition for review without prejudice, stating as follows:

> Petition for review denied without prejudice to any relief to which defendant might be entitled after this court determines in *People v. Black*, S126182, and *People v. Towne*, S125677, the effect of *Blakely v. Washington* (2004) __U.S. __ 124 S.Ct. 2531, on California law.

Dkt. 1, at 11.

On March 3, 2006, petitioner filed this petition for writ of habeas corpus. Dkt. 1. The court has carefully reviewed the entire record in this case.

## CLAIMS

Petitioner raises three claims in his petition, which are quoted as follows:

1. Petitioner contends the trial court's refusal to permit petitioner from entering a plea of not guilty by reason of insanity vitiated his "Substantive" rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

2. Petitioner avers there is a dichotomy between the state and federal standards for determining competency, contumacious to Due Process of law.

3. Petitioner contends the trial court's decision to impose upper and consecutive terms were based on factors which violated the Sixth Amendment right to jury trial.

Docket 1.

## EXHAUSTION

Before claims may be raised in a federal habeas corpus petition, state remedies must be exhausted; or an applicant must show there is either an absence of available state corrective process or that circumstances exist that render such process ineffective to protect the rights of the applicant. 28 U.S.C. § 2254(b)(1); *see also, Rose v. Lundy*, 455 U.S. 509 (1982). A claim has been exhausted once it has been fairly presented to the state's highest court and the court has had the opportunity to rule on the merits of

the claim. *See O'Sullivan v. Boerckel*, 119 S.Ct. 1728, 1733-34 (1999); *Picard v. Connor*, 404 U.S. 270, 275-276 (1971); *Batchelor v. Cupp*, 693 F.2d 859, 862(9th Cir. 1982), *cert. denied*, 463 U.S. 1212 (1983).

A petitioner must present the claims to the state's highest court based upon the same federal legal theory and factual basis as the claims are subsequently asserted in the habeas petition. *Hudson v. Rushen*, 686 F.2d 826, 829-830 (9th Cir. 1982), *cert denied* 461 U.S. 916 (1983); *Schiers v. California*, 333 F.2d 173, 176 (9th Cir. 1964). Specifically, a petitioner must apprise the state courts that an alleged error is not only a violation of state law, but a violation of the Constitution. *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995). Vague references to broad constitutional principles such as due process, equal protection, or a fair trial do not satisfy the exhaustion requirement. *Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999); *Gatlin v. Madding*, 189 F.3d 882, 888 (9th Cir. 1999), cert. denied, 120 S.Ct. 815 (2000). A petitioner must include reference to a specific federal constitutional guarantee as well as a statement of the facts that entitle the petitioner to relief. *Gray v. Netherland*, 518 U.S., at 162-163.

A petitioner who has not exhausted state court remedies may be excluded from presenting the issues to the state's highest court when the petitioner has not complied with a state procedural rule. *Harris v. Reed*, 489 U.S. 255, 260 (1989).

When a state prisoner defaults on federal habeas claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or show that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750-751 (1991).

*Cause and Prejudice*: To satisfy the "cause" prong of the cause and prejudice standard, petitioner must show that some objective factor external to the defense prevented him from complying with the state's procedural rule. *Coleman*, 501 U.S. at 752-753 (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Prejudice exists if the alleged errors were of constitutional dimensions and worked to the defendant's actual and substantial disadvantage. *United States v. Frady*, 456 U.S. 152, 170 (1982). Petitioner has not shown any facts to establish that an objective factor external to the defense prevented

him from complying with the state requirements for appeal or other postconviction relief. Because petitioner has not established cause for the default, it is unnecessary to consider whether he was actually prejudiced.

*Fundamental Miscarriage of Justice*: The court may grant the writ to correct a fundamental miscarriage of justice if petitioner can show that his conviction is the result of a constitutional violation and that he is actually innocent. *Murray*, 477 U.S. at 495-96.

In this case, petitioner exhausted Claims 1 and 2 before the California Supreme Court; these claims will be addressed on the merits. The exhaustion issue with regard to Claim 3 will be addressed in connection with the analysis of Claim 3 below.

## STANDARD OF REVIEW

A habeas corpus petition shall not be granted with respect to any claim adjudicated on the merits in the state courts unless the adjudication either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts. 28 U.S.C. §2254(d). Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 120 S.Ct. 1495, 1523 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Id.*

A determination of a factual issue by a state court shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. §2254(e)(1).

## DISCUSSION

*1. Not Guilty by Reason of Insanity Plea*

Petitioner claims that his constitutional rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution were violated when the trial court refused to permit him to enter a plea of

not guilty by reason of insanity after trial had begun. Petitioner contends that the trial court erred in considering only the timeliness of the request rather than assessing his showing on the merits.

This claim was arguably exhausted. Accordingly, the court will review the claim on the merits.

In reviewing this claim, the California Court of Appeal concluded as follows:

> Defendant's contention that the court abused its discretion when it denied his request to enter an NGI plea arises as follows:
>
> On April 18, 2001, defendant was represented by the public defender and entered a plea of not guilty. On June 5, 2001, counsel declared a doubt as to defendant's competency, the court suspended criminal proceedings, and appointed Drs. Nelson and Ebert to evaluate defendant. On August 20, 2001, the matter was submitted on the doctors' reports, defendant was found competent and criminal proceedings were reinstated.
>
> On April 26, 2002, defendant filed a motion again seeking an evaluation of defendant's competency based upon evaluation by Drs. Mattiuzzi and Woodman whom defendant claimed had found him incompetent. On May 7, 2002, the court reappointed Drs. Nelson and Ebert for an "update" as to any new doubt of defendant's competency. Following the receipt of the reports by Drs. Nelson and Ebert, each of whom concluded that defendant remained competent, the court denied further hearings on the issue of defendant's competency.
>
> On October 16 matters relating to pretrial motions were heard, and on October 17 jury selection commenced. On October 18, 2002, court convened before 9 a.m. and jury selection continued throughout the morning and into the afternoon. Following a recess shortly before 2 p.m., defendant's counsel informed the court that defendant had indicated an interest in "seeking [the] option" of entering an NGI plea and waiving his right to a jury trial.
>
> Counsel told the court that when defendant informed him that he wanted to move "forward with a not guilty by reason of insanity defense," that counsel explained to defendant the "pros and cons" of the defense, and defendant became interested in "possibly pursuing that defense...." Defense counsel further explained that although several other attorneys from the public defender's office had "sat down with him and explained [the NGI defense] to [defendant], they did not explain it to him quite the way that [present counsel] did...." When the court expressed its concern with the timeliness of the plea, defendant personally stated, "I wasn't delaying, Your Honor. I just-It just came to me in the last week. You know, it's something that I didn't know about. You know, I don't know the process. I have never been to trial, so-". The court continued the matter to October 30 for further proceedings.
>
> On October 30, 2002, counsel informed the court that defendant did want to enter an NGI plea. The People objected, arguing that neither good cause for the delay in entering the plea nor potential merit for the plea had been shown. Defendant countered that merit to the plea was shown by the reports from Drs. Mattiuzzi and Woodman regarding his lack of competency, and diligence was established by the defense team's "trying to convince the defendant that he needed to take an NGI plea," a plea which could not be entered without the defendant's approval.
>
> The court denied the NGI request, stating it was not "getting to the issue whether [the plea] has merit" and was "willing to concede ... that there is a colorable claim," but was denying the motion because "[t]he fact is, you've had a year and a half to discuss the issue, and that's more than enough."
>
> Defendant argues the court abused its discretion in not finding good cause for the delay because, as the court knew, the delay in entering the plea was "caused solely by the failure of the defendant, who had a history of mental illness, to comprehend the insanity defense and defendant's

ORDER
Page - 6

> accompanying refusal to permit counsel to proceed with that defense before the point at which counsel informed the Court of the defendant's agreement to pursue that defense." The argument is not persuasive.
>
> Where the trial court properly finds a lack of good cause for delay in entering an NGI plea, it is immaterial whether the plea may have merit. (*People v. Montiel* (1985) 39 Cal.3d 910, 921-923; *People v. Lutman* (1980) 104 Cal.App.3d 64, 68.) The trial court's decision should be overturned only upon a showing of abuse of discretion. (*People v. Montiel, supra*, at p. 923.)
>
> Here, as the court noted, defendant had a year and a half to consider the plea (April 2001 to October 2002). During that period, defendant appeared frequently in court with counsel. Defendant was expressly found competent, meaning that he was able "to understand the nature of criminal proceedings" and "to assist counsel in the conduct of [his] defense in a rational manner." (See § 1367, subd. (a); *Pederson v. Superior Court* (2003) 105 Cal.App.4th 931, 936.) Defense counsel admitted that throughout the proceedings various attorneys from the public defender's office had attempted to persuade defendant to enter the not guilty by reason of insanity plea, but he refused to do so. Since defendant was able to understand the proceedings and to cooperate with counsel during all of the proceedings if he so chose, there is no basis for believing his belated and bare assertion that he did not comprehend the meaning of an NGI plea until after the start of trial when it was again explained to him. In such circumstances, we find no abuse of discretion by the court in refusing to permit the plea after the commencement of trial.

*People v. Johnson*, 2005 WL 318583 * 2-3.

The Due Process clause of the Fourteenth Amendments provides that no person shall be deprived of life, liberty or property without due process of law. In analyzing a procedural due process claim, a court must first determine whether the claimant has been deprived of a liberty or property interest protected by the Constitution; if so, the court must determine whether the procedures attendant upon that deprivation were constitutionally sufficient. *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454 (1989). In order to grant relief pursuant to a Due Process claim, a federal habeas court must find that the absence of fairness fatally infected the trial; the acts complained of must be of such quality that they necessarily prevented a fair trial. *Kealohapauole v. Shimoda,* 800 F.2d 1463, 1465 (9th Cir.1986).

Under California law, a defendant may, prior to commencement of trial and for good cause shown, be allowed to change the plea to not guilty by reason of insanity. Pen. Code § 1016 provides in relevant part as follows:

> A defendant who does not plead guilty may enter one or more of the other pleas. A defendant who does not plead not guilty by reason of insanity shall be conclusively presumed to have been sane at the time of the commission of the offense charged; provided, that the court may for good cause shown allow a change of plea at any time before the commencement of the trial. A defendant who pleads not guilty by reason of insanity, without also pleading not guilty, thereby admits the commission of the offense charged.

If a defendant requests to plead guilty after trial commences, the defendant must show that he was diligent in seeking to change his plea. *People v. Montiel*, 39 Cal.3d 910, 921-23 (1985); *People v.*

ORDER
Page - 7

*Lutman*, 104 Cal.App.3d 674, 68 (1980). Where the trial court properly finds a lack of good cause for delay in entering an NGI plea, it is immaterial whether the plea may have merit. *Montiel*, 39 Cal.3d at 921-923; *Lutman*, 104 Cal.App.3d at 68. The trial court's ruling is reviewed on appeal for an abuse of discretion. *Montiel*, 39 Cal.3d at 923. The reason for the focus on the cause of delay, rather than the merits of the plea, is that a precondition requiring evidence on the merits and the weight of the evidence to be adduced on the new plea would violate both the privilege against self-incrimination and the psychotherapist-patient privilege and produces procedural havoc by placing the trial judge in the situation where he or she not only is required to invade the province of the jury but to make the jury unnecessary. *Lutman*, 104 Cal.App.3d at 68.

The Court of Appeal decision accurately reflects the procedure with regard to this claim. *See* Dkt. 14, at 70, 80, 82-88. The trial court denied the motion to enter the NGI plea because of lack of diligence, but conceded that petitioner had made a colorable claim. Dkt. 14, at 86-87. The decision was made on October 30, 2002, after the trial commenced, and immediately before jury selection began Dkt. 14, at 82-83, 93-94. Petitioner presented a diminished capacity defense at trial, including testimony of a psychologist. *See* Dkt. 14, at 636; 818, *et seq.*

Petitioner has cited no United Supreme Court authority for his claim that his attempt to change his plea to one of not guilty by reason of insanity, after the commencement of the trial but before jury selection began, violated his right to Due Process. Petitioner has not shown that the decision of the trial court to deny his motion to change his plea to not guilty by reason of insanity prevented him from obtaining a fair trial.

The California state court decisions rejecting petitioner's claim that he was denied Due Process when he was not permitted to change his plea to not guilty by reason of insanity were not contrary to or an unreasonable application of clearly established federal law, as determined by the Supreme Court, nor did they result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts. Petitioner's Due Process claim is without merit.

*2. Reinstitution of Competency Proceedings*

Petitioner contends that he was denied his right to Due Process when the trial court refused to permit him to reopen the issue of competency during trial.

This claim was exhausted in state court, and will be reviewed on the merits.

In reviewing this claim, the California Court of Appeal concluded as follows:

Defendant contends the trial court improperly refused to reinstitute competency proceedings in the face of new defense evidence and repeated expressions by defense counsel regarding his lack of competence. We disagree.

A defendant who, as a result of mental disorder or developmental disability, is 'unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner,' is incompetent to stand trial. (§ 1367.) When the accused presents substantial evidence of incompetence, due process requires that the trial court conduct a full competency hearing. [Citation.] Evidence is 'substantial' if it raises a reasonable doubt about the defendant's competence to stand trial. [Citation.] The court's duty to conduct a competency hearing arises when such evidence is presented at any time 'prior to judgment.' [Citations.]

"When a competency hearing has already been held and the defendant has been found competent to stand trial, however, a trial court need not suspend proceedings to conduct a second competency hearing unless it 'is presented with a substantial change of circumstances or with new evidence' casting a serious doubt on the validity of that finding. [Citations.]" (*People v. Jones* (1991) 53 Cal.3d 1115, 1152-1153.) Additionally, once "a competency hearing has already been held, the trial court may appropriately take its personal observations into account in determining whether there has been some significant change in the defendant's mental state." (*Id.* at p. 1153.)

Here, in June 2001, defense counsel declared a doubt as to defendant's competence and Drs. Nelson and Ebert were appointed to examine him. In August the question of defendant's competence was submitted on the reports of these doctors and the court found defendant competent.

In April 2002, defendant's counsel again declared a doubt regarding defendant's competency and provided the court with letters from Drs. Mattiuzzi and Woodman. The trial court, while making it clear that it was not declaring a doubt as to defendant's competence, reappointed Drs. Ebert and Nelson for a current evaluation.

Drs. Ebert and Nelson reaffirmed their prior positions that defendant was competent to stand trial. Dr. Woodman concluded that while defendant was able to understand the nature of the proceedings, his "mental illness impair[ed] his ability to assist with his defense and to make independent judgments," and, therefore, defendant was not competent to stand trial. Dr. Mattiuzzi noted that as recently as March 31, 2002, based upon his prior examination of defendant, he "thought that [defendant] met the minimal standards for competency." However, based upon statements contained in a letter from defendant to his counsel, dated March 21, 2002, Dr. Mattiuzzi now believed there was "a doubt about [defendant's] competency."

On August 13, 2002, the court refused to conduct a competency hearing, concluding that the "threshold" showing that the opinions of the psychologists (Drs. Nelson and Ebert) would change had not been met. On October 8, 16, 18 and November 13, defense counsel expressed doubts as to defendant's competence, but the court refused to entertain the issue.

In support of his claim the trial court erred in refusing to conduct a competency hearing, defendant argues: "[D]efense counsel presented the court with both substantial evidence *and* changed circumstances casting serious doubt on the validity of the prior finding of competence. Dr. Mattiuzzi and Dr. Woodman presented reports finding that [defendant] was not currently competent. In addition, defense counsel more than once after the matter was called for trial stated for the record that he harbored doubts as to [defendant's] competence, not only based on the expert opinions but also based on [defendant's] refusal to cooperate with him. Counsel expressed the opinion more than once that [defendant's] delusions rendered [defendant] unable to cooperate with

counsel and incompetent to proceed." (Orig.italics.)

Contrary to defendant's claim, he did not present substantial evidence of incompetence. Although Dr. Woodman did conclude defendant was incompetent, Dr. Mattiuzzi did not so find. Instead, Dr. Mattiuzzi stated he had previously found defendant marginally competent, but based upon defendant's letter of March 21, 2002, to his counsel, Dr. Mattiuzzi now had a "doubt" as to defendant's competence.

Nor did counsel's continuing expressions of doubt as to defendant's competence, a doubt based upon the doctors' opinions and defendant's refusal to cooperate, constitute a change of circumstances. That counsel accepted the opinions of Drs. Mattiuzzi and Woodman was of no particular moment; what was of import were the reports themselves, which the court already had. And defendant's lack of cooperation was not of recent manifestation-defendant had been refusing to cooperate throughout the proceedings, as shown by his *Marsden* motions and his counsel's argument that several of his public defenders had attempted to get him to agree to enter a not guilty by reason of insanity plea.

Finally, this is not a circumstance where the court lacked the opportunity to interact with defendant. The court had once found him competent and had abundant opportunity to assess his conduct in his many appearances before the court. (See *People v. Danielson* (1992) 3 Cal.4th 691, 727, overruled on another point in *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069 [The trial judge's ruling regarding whether a competency hearing is required should be given great deference since " '[a]n appellate court is in no position to appraise a defendant's conduct in the trial court as indicating insanity, a calculated attempt to feign insanity and delay the proceedings, or sheer temper' "].)

Consequently, we find no error by the court in refusing to reinstitute a competency hearing.

*People v. Johnson*, 2005 WL 318583 * 3-5.

When deciding whether a criminal defendant is competent to stand trial, a court determines if the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding, and whether he has a rational as well as factual understanding of the proceedings against him. *Dusky v. United States*, 362 U.S. 402(1960). A trial court must always be alert to circumstances suggesting a change that would render the accused unable to meet the standards of competence to stand trial. *Drope v. Missouri*, 420 U.S. 162, 181 (1975). Evidence of a defendant's behavior and demeanor at trial are relevant to the ultimate decision of competency to stand trial. *Pate v. Robinson*, 383 U.S. 375, 386 (1966).

In deciding whether to order a second competency exam, the Ninth Circuit has stated as follows:

The question as to when a second examination under the section is required is a question which depends upon the showing made, and the length of time elapsed from the prior psychiatric examination. Obviously a court would not be required to order a hearing during each week of a trial, absent unusual circumstances. The decision as to whether to require a second examination rests in the sound discretion of the trial court. The trial court's decision will not be upset unless there is abuse of that discretion.

*United State v. Bodey*, 547 F.2d 1383, 1385-1387 (9th Cir.), *cert denied*, 431 U.S. 932 (1977).

The California Court of Appeal decision accurately reflects the record. A public defender raised the issue of petitioner's incompetence in July of 2001 (Dkt. 14, at 62); the court referred the issue to Drs. Ebert and Nelson (Dkt. 14, at 62); at some point before the court made a determination on petitioner's competency, defense counsel consulted Dr. Mattiuzzi, who determined that petitioner was competent (Dkt. 14, at 62); the competency issue was submitted to the court on the written reports of Dr. Ebert and Nelson (Dkt. 14, at 7, 56); the trial court determined that petitioner was competent ; at some point, one of petitioner's attorneys indicated that there was a doubt as to petitioner's competency (Dkt. 14, at 56); the court appointed Drs. Mattiuzzi and Woodman to evaluate petitioner (Dkt. 14, at 56); Drs. Mattiuzzi and Woodman concluded that petitioner was incompetent (Dkt. 14, at 56); the court requested Drs. Ebert and Nelson to reevaluate petitioner (Dkt. 14, at 56); Drs. Ebert and Nelson did not change their conclusions that petitioner was competent (Dkt. 14, at 61); Drs. Ebert and Nelson indicated that there were substantial issues regarding cooperation with the defense but they believed that petitioner had the ability to cooperate with the defense if he chose to do so (Dkt. 14, at 64); on October 8, 2002, petitioner requested a second competency hearing on the basis that "there was a substantial change of circumstances in that they [Drs. Mattiuzzi and Woodman] had information in their possession that Dr. [Ebert] and Dr. Nelson did not have" (Dkt. 14, at 4-5); on October 16, 2002, petitioner again requested that the court conduct a competency hearing (Dkt. 14, at 56); and at the hearing on October 16, 2002, the court denied petitioner a second hearing on competency, concluding that he had not shown a sufficient change of circumstances to warrant a hearing on his competence (Dkt. 14, at 60-61).

Petitioner has not shown that he is entitled to relief on this claim. The trial court appointed Dr. Ebert and Nelson to evaluate petitioner for competency. Some time later, when petitioner's counsel requested that the issue be revisited, the court appointed Dr. Mattiuzzi and Dr. Woodman to provide opinions regarding petitioner's competency; after he received these reports, the court requested Dr. Ebert and Dr. Nelson to reevaluate petitioner. The court relied on Dr. Ebert and Dr. Nelson's opinions on reevaluation to conclude that petitioner had not shown a sufficient change of circumstances to warrant a hearing on his competence to stand trial. Petitioner has not shown that either the procedure adopted by the trial court to pursue the issue of petitioner's competency or the decision rejecting yet another competency proceeding, violated his constitutional right to Due Process.

The California state court decisions rejecting petitioner's claim that he was denied Due Process when the court did not conduct a competency proceeding during trial were not contrary to or an unreasonable application of clearly established federal law, as determined by the Supreme Court, nor did they result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts. Petitioner's Due Process claim is without merit.

*3. Sentence*

*Claim*. Petitioner claims that his Sixth Amendment right to a trial by jury was violated when the trial court imposed upper and consecutive terms.

*Exhaustion*. In his supplemental brief to the California Court of Appeal, petitioner raised the following claim:

> The imposition of a term deviating upwards from the statutory norm of the middle term and concurrent terms violates the federal constitutional right to jury trial unless the jurors find true all the relevant aggravating and mitigating factors.

Dkt. 14, Exh. D, at i. Petitioner cited *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Blakely v. Washington*, 542 U.S. 296 (2004) in support of this claim.

In reviewing this claim, the California Court of Appeal concluded as follows:

> Lastly, the defendant claims the trial court erred in imposing the upper term on count II and in ordering that the sentence on count II be run consecutively to the sentence on count I. He argues that the jury did not find the facts necessary for the imposition of such sentences. (*Blakely v. Washington* (2004) 542 U.S. 296 [159 L.Ed.2d 403].) We disagree.
>
> The upper term may be imposed when the defendant was armed with or used a weapon at the time of commission of the offense. (Cal. Rules of Court, rule 4.421(a)(2).) The jury found true allegations that defendant used a deadly weapon as to all counts and that fact was not used to impose an enhancement under section 12022, subdivision (b)(1) because it was stayed by the court.
>
> A consecutive term may be imposed when the crimes involve separate acts of violence, as the jury necessarily found in finding defendant guilty of counts I and II.

*People v. Johnson*, 2005 WL 318583 * 6.

On May 11, 2005, the California Supreme Court denied petitioner's petition for review without prejudice to any relief to which he might be entitled after the California Supreme Court determines in *People v. Black*, S126182, and *People v. Towne*, S125677, the effect of *Blakely v. Washington, supra* on California law.

Under California law at the time petitioner was sentenced, the sentencing judge was required to select the upper, middle, or lower term for each count for which a defendant was convicted. Cal.Rules of

ORDER
Page - 12

Court, rule 4.420(a) (Former Rule 439, adopted, eff. July 1, 1977, amended, eff. July 28, 1977; former Rule 441, adopted, eff. July 1, 1977, amended, eff. July 28, 1977). In *Cunningham v. California*, 549 U.S. 270, 278-79 (2007), the United States Supreme Court summarized the sentencing structure as follows:

> The Rules provide a nonexhaustive list of aggravating circumstances, including "[f]acts relating to the crime," Rule 4.421(a),FN7 [omitted] "[f]acts relating to the defendant," Rule 4.421(b),FN8 [omitted] and "[a]ny other facts statutorily declared to be circumstances in aggravation," Rule 4.421(c). Beyond the enumerated circumstances, "the judge is free to consider any 'additional criteria reasonably related to the decision being made.' " *Black*, 35 Cal.4th, at 1247, 29 Cal.Rptr.3d 740, 113 P.3d, at 538 (quoting Rule 4.408(a)). "A fact that is an element of the crime," however, "shall not be used to impose the upper term." Rule 4.420(d). In sum, California's DSL, and the rules governing its application, direct the sentencing court to start with the middle term, and to move from that term only when the court itself finds and places on the record facts-whether related to the offense or the offender-beyond the elements of the charged offense.

On January 22, 2007, the United States Supreme Court, in *Cunningham v. California, supra,* determined that California's sentencing law, by placing sentence-elevating factfinding within the judge's province, violated a defendant's right to trial by jury safeguarded by the Sixth and Fourteenth Amendments. *Id.* The *Cunningham* opinion discussed and relied on the principles set forth in *Apprendi* and *Blakely*. *Id.*

On July 19, 2007, the California Supreme Court decided, in *People v. Black (Black II)*, that, "as long as a single aggravating circumstance that renders a defendant *eligible* [italics in the original] for the upper term sentence has been established in accordance with the requirements of *Apprendi* and its progeny, any additional fact finding engaged in by the trial court in selecting the appropriate sentence among the three available options does not violate the defendant's right to jury trial." *People v. Black*, 41 Cal.4th 799, 812 (2007). The California Supreme Court also determined that the right to a jury trial is not violated by the trial court's imposition of consecutive sentences. *Id.* at 820-823.

On June 26, 2008, the California Supreme Court decided, in *People v. Towne*, that the defendant in that case did not have a right to a jury trial on all aggravating sentencing factors relied on by the trial court in imposing the upper term sentence for a joyriding conviction, because the upper term sentence was supported by defendant's prior convictions and prison terms. *People v. Towne*, 44 Cal.4th 63, 86 (2008).

The proceedings in *Black II* and *Towne* have concluded. The threshold question therefore is whether petitioner exhausted his sentencing claim in state court, and if not, whether he should be permitted to attempt to exhaust his state court remedies before this court rules on the merits of the claim. *See Rhines v. Weber*, 544 U.S. 269, 278 (2005).

In his direct appeal, petitioner presented to the California state courts his claim that he was denied his constitutional right to a trial by jury when the sentencing judge imposed an upper term based upon the judge's determination of aggravating factors, and when the sentencing judge imposed consecutive terms instead of concurrent terms. The claim was therefore exhausted in state court.

Even if he had not exhausted the claim in state court, petitioner's attempt to pursue his sentencing claim now in state court would be futile. In the order denying petitioner's petition for review, the California Supreme Court left the door open for petitioner to pursue further relief if warranted by the decisions in *Black II* and *Towne*. However, because the jury determined that petitioner used a deadly weapon in the commission of the crimes, (*See* Cal. Rules of Court, rule 4.421(a)(2)(use of a deadly weapon is a circumstance in aggravation) and because that aggravating circumstance alone would have justified an upper term sentence, petitioner would be foreclosed from pursuing relief by the decisions in *Towne* and *Black II*. An attempt to exhaust this claim in state court would be futile under California authority. The court notes that this order does not preclude petitioner from attempting to pursue in the state courts any relief he may have available.

In the second part of this claim, petitioner contends that imposition of consecutive sentences violated his right to a trial by jury. In *Black II*, the California Supreme Court concluded that the determination whether two or more sentences should be served consecutively is a sentencing decision made by the judge after the jury has made the factual findings necessary to subject the defendant to the statutory maximum sentence on each offense, and does not implicate defendant's right to a jury trial on facts that are the functional equivalent of elements of an offense. *People v. Black*, 41 Cal.4th at 823.

In petitioner's case, the trial court imposed consecutive sentences, based upon a jury finding petitioner guilty of the crimes and use of a deadly weapon in the commission of the offense. An attempt to exhaust this claim in state court would be futile under California authority.

The court notes that, as discussed below, petitioner's claim is plainly meritless for purposes of *Rhines v. Weber*, 544 U.S. 269, 274-75 (2005). The court also notes that an application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in state courts. 28 U.S.C. § 2254(b)(2).

*Merits of Claim that Imposition of Upper End Sentence and Consecutive Sentences Denied Petitioner Right to Trial by Jury.* Petitioner's sentencing claim has two parts. Petitioner first claims that imposition of the upper term for his conviction violated his right to trial by jury because the judge, not the jury, found circumstances of aggravation to justify the upper sentence. The second part of petitioner's claim is that imposition of consecutive sentences violated his right to a trial by jury.

In imposing the sentence in this case, the judge found that the crime was exceptionally brutal; the victims were strangers to petitioner, the crimes were separate; the crimes constituted a gratuitous act of extreme violence; and Mr. Booker was in an extremely vulnerable situation. Dkt. 14, 1235-1237. At the time petitioner was sentenced, these findings constituted circumstances in aggravation, pursuant to Cal. Rules of Court, rule 4.421(a). The court imposed upper term sentences, and ruled that these sentences were to run consecutively. *See* Dkt. 14, 1236 *et seq*.

The judge did not cite use of a weapon at the time of commission of the crimes as a circumstance in aggravation. Under Cal. Rules of Court, rule 4.421(a)(2), one of the circumstances in aggravation is that "[t]he defendant was armed with or used a weapon at the time of the commission of the crime." In this case, the jury found use of a deadly weapon during the commission of the offenses for which petitioner was found guilty. *See* Dkt. 14, Clerk's Transcript on Appeal, Volume I of II, at 279, 281,282, 285, 287, 289, 290.

The California Court of Appeal rejected petitioner's claim that imposition of upper end term violated his right to a trial by jury, reasoning that the upper term may be imposed when the defendant was armed with or used a weapon at the time of commission of the offense, that the jury found allegations that defendant used a deadly weapon as to all counts to be true; and that the use of a deadly weapon was not used to impose an enhancement under section 12022, subdivision (b)(1) because it was stayed by the court. This is not an unreasonable interpretation of *Cunningham*, which held that an upper term sentence based upon circumstances of aggravation found by the judge violated a defendant's right to a trial by jury. The circumstance in aggravation in petitioner's case–use of a deadly weapon in the commission of the crimes–was found by a jury, based upon a reasonable doubt standard , even though that circumstance in aggravation was not relied upon by the sentencing judge at the sentencing hearing,   This is not an unreasonable interpretation of *Apprendi*, *Blakely*, or *Cunningham*, all of which involved decisions by the

sentencing judge, not a finding by the jury, regarding aggravating factors.

The California Court of Appeal rejected petitioner's claim that imposition of consecutive sentences violated his right to a trial by jury, reasoning that a consecutive term may be imposed when the crimes involve separate acts of violence, as the jury necessarily found in finding defendant guilty of counts I and II. This is not an unreasonable interpretation of *Apprendi*, *Blakely*, or *Cunningham*, none of which addressed imposition of consecutive sentences.

The California state court decisions rejecting petitioner's claim that his right to a trial by jury was violated when the sentencing court imposed an upper term sentence, and when the sentencing court imposed consecutive sentences, were not contrary to or an unreasonable application of clearly established federal law, as determined by the Supreme Court, nor did they result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts. Petitioner's claim that he was denied a right to a trial by jury in the imposition of his sentence is without merit.

### PETITIONER'S REQUESTS

On February 26, 2009, the court entered the following order:

> Therefore, it is hereby
>
> **ORDERED** that not later than March 20, 2009, respondent may file an amended answer, addressing only the issue presented above: whether petitioner should be permitted to attempt to exhaust Claim 3 in the California state courts. Not later than April 10, 2009, petitioner may file a response to the amended answer, addressing only the issue of whether he should be permitted to attempt to exhaust Claim 3 in the California state courts. The petition for writ of habeas corpus is **RENOTED** for consideration on April 10, 2009.

Dkt. 19.

On March 16, 2009, respondent filed an amended answer, addressing the issue identified by the court in its February 26, 2009 order. Dkt. 20.

On April 8, 2008, petitioner filed a document, requesting additional time to file the amended answer and requesting that the court appoint counsel for him. Dkt. 21.

*Appointment of Counsel*. Pursuant to 18 U.S.C. § 3006A(2)(B), whenever the court determines that the interests of justice so require, representation may be provided for any financially eligible person who is seeking relief under 28 U.S.C. §§ 2241, 2254, or 2255. There is no right to have counsel appointed in cases brought under 28 U.S.C. § 2254 unless an evidentiary hearing is required, because they are civil, not criminal, in nature. *See Terravona v. Kincheloe*, 852 F.2d 424, 429 (9th Cir. 1988); *Brown v.*

*Vasquez*, 952 F.2d 1164, 1168 (9th Cir. 1992); and Rule 8(c) of the Rules Governing Section 2254 Cases in the United States District Courts. An evidentiary hearing has not been granted in this case. Further, petitioner has been able to articulate his issues and claims in these proceedings. Petitioner's request that the court appoint counsel should be denied.

*Extension of Time*. Petitioner requests additional time to respond to the court's February 26, 2009 order that offered him the opportunity to address the issue of whether he should be permitted to attempt to exhaust Claim 3 in the California state courts. Petitioner was afforded ample time in which to file an amended answer; the closure of the prison library for one week is not a sufficient reason for petitioner's failure to file a response to the limited issued identified by the court. Further, the court has carefully considered whether any attempt by petitioner to further pursue his sentencing claim in state court would be feasible, and has determined any such attempt would be futile. Finally, as noted above, petitioner is not precluded by this order from attempting to pursue further relief on his sentencing claim in California state court. Petitioner's request for an extension of time should be denied.

## EVIDENTIARY HEARING

If a habeas applicant has failed to develop the factual basis for a claim in state court, an evidentiary hearing may not be held in federal court unless (A) the claim relies on (1) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court that was previously unavailable, or (2) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense. 28 U.S.C. §2254(e)(2) (1996). Petitioner has not shown that a new rule of constitutional law has been made retroactive to cases on collateral review by the Supreme Court that was previously unavailable. Further, petitioner has not set forth any factual basis for his claims that could not have been previously discovered by due diligence. Finally, the facts underlying petitioner's claims are insufficient to establish that, but for the constitutional error, no reasonable factfinder would have found him guilty of the crime. Therefore, petitioner is not entitled to an evidentiary hearing.

## CONCLUSION

The state court decisions denying petitioner's claims for relief and upholding petitioner's

convictions were not contrary to or an unreasonable application of clearly established federal law, as determined by the Supreme Court, nor did they result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts. The petition for writ of habeas corpus should be denied and the case dismissed with prejudice.

## CERTIFICATE OF APPEALABILITY

The district court should grant an application for a Certificate of Appealability only if the petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). To obtain a Certificate of Appealability under 28 U.S.C. § 2253(c), a habeas petitioner must make a showing that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 120 S.Ct. 1595, 1603-04 (2000) (*quoting Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). When the court denies a claim on procedural grounds, the petitioner must show that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Slack v. McDaniel*, 120 S.Ct. at 1604.

In the event that petitioner appeals the denial of his habeas corpus petition to the Ninth Circuit U.S. Court of Appeals, the court has determined that a Certificate of Appealability should be granted on the following issues:

1. Did petitioner exhaust in state court his claim that his Sixth Amendment right to a trial by jury was violated when the trial court imposed upper and consecutive terms based upon factors that were determined by the judge, not the jury?

2. Was petitioner's Sixth Amendment right to a trial by jury violated when the trial court imposed upper and consecutive terms based on factors that were determined by the judge, not the jury?

Therefore, it is hereby

**ORDERED** that the petition for writ of habeas corpus is **DENIED**. A Certificate of Appealability is **GRANTED** on the issues identified above. Petitioner's request that the court appoint counsel to

represent him (Dkt. 21) is **DENIED**. Petitioner's request for an extension of time to file an amended answer (Dkt. 21) is **DENIED**.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 10th day of April, 2009.

/s/ Robert J Bryan
Robert J Bryan
United States District Judge